UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

EDNA MARGARET SAEZ,

                Plaintiff,

       -vs-                                         14-CV-858-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

---

APPEARANCES:   KENNETH R. HILLER, ESQ., Buffalo, New York, for Plaintiff

                         WILLIAM J. HOCHUL, JR., United States Attorney (EMILY M. FISHMAN, Special Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of Chief United States District Judge William M. Skretny dated October 8, 2015 (Item 16).

Plaintiff Edna Margaret Saez initiated this action on October 16, 2014, pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Social Security Disability Insurance ("SSDI") and Widow's Insurance ("WI") benefits under Title II of the Act, and for Supplemental Security Income ("SSI") under Title XVI of the Act. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (*see* Items 7, 11). For the following reasons, plaintiff's motion is granted, and the Commissioner's motion is denied.

## BACKGROUND

Plaintiff was born on April 2, 1957 (Tr. 134).[1] She protectively filed applications for SSDI, WI, and SSI benefits on November 9, 2010, alleging disability due to HIV, depression, anxiety, high cholesterol, coronary artery disease (CAD), and high blood pressure, with an amended alleged onset date of January 20, 2010[2] (Tr. 134-47, 155, 159). All three applications were denied administratively on February 3, 2011 (Tr. 76-88). Plaintiff requested a hearing, which was held on April 23, 2012, before Administrative Law Judge (ALJ) David Lewandowski (Tr. 34-69). Plaintiff appeared and testified at the hearing, and was represented by counsel. Vocational Expert ("VE") Jay Steinbrenner also appeared and testified.

On June 21, 2012, the ALJ issued a decision finding that plaintiff was not disabled under the Act (Tr. 15-28). Following the sequential evaluation process outlined in the Social Security Administration regulations governing claims for benefits under Titles II and XVI (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date, and at steps two and three, that plaintiff's "severe" impairments (identified as low back pain, neck pain, and coronary artery disease), considered singly and in combination, did not meet or equal the severity of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), with specific consideration given to the criteria for impairments listed under

---

[1] Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 6).

[2] Plaintiff's original onset date of March 28, 1998, was amended prior to the hearing to reflect work activity ending January 19, 2010 (*see* Tr. 38, 213).

sections 1.00 (Musculoskeletal System) and 4.00 (Cardiovascular System) (Tr. 21-22). The ALJ also considered the medical evidence regarding plaintiff's HIV, intermittent hand pain, and depression, but found these impairments to be "non-severe" because they did not impose any significant work-related limitations (*id.*).

The ALJ then discussed the evidence in the record regarding the limitations caused by plaintiff's impairments, considering the objective medical evidence, medical source opinions, and plaintiff's hearing testimony regarding her complaints, limitations, and activities of daily living (Tr. 22-27), and determined that plaintiff had the residual functional capacity ("RFC") to perform work at the "light"[3] exertional level, with certain postural and manipulative limitations (Tr. 22). In making this assessment, the ALJ accorded "great weight" to the medical source statement of consultative examining physician Dr. Donna Miller, D.O., who conducted an internal medicine examination of plaintiff on January 12, 2011, and found "mild limitation with exertional activity given her cardiac condition" and "mild limitation to repetitive bending, turning, twisting, reaching, pushing, and pulling" (Tr. 290). The ALJ also noted that the October 2010 employability report of Lynn Grucza, plaintiff's treating nurse practitioner at Erie County Medical Center ("ECMC"), which indicated that plaintiff had no limitations in standing, walking, sitting, or using hands, and

---

[3]"Light work" is defined in the regulations as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

moderate limitations in lifting, carrying, pushing, pulling, and climbing stairs (*see* Tr. 281), provided an "accurate assessment of the claimant's work-related abilities" (Tr. 27). However, the ALJ gave no weight to NP Grucza's "more restrictive" later findings, reported on a Physical Residual Functional Capacity Questionnaire (PRFCQ) form dated December 7, 2011 (*see* Tr. 348-52), as "not supported by the treatment notes of record" (Tr. 27).

Based upon this RFC assessment, as compared to the physical and mental demands of plaintiff's past work as a packaging machine operator and retail sales clerk, the ALJ determined at step four of the sequential evaluation that plaintiff was able to perform her past relevant work as it is actually and generally performed, and was therefore not disabled within the meaning of the Act at any time from the amended onset date (Tr. 27).

The ALJ's decision became the Commissioner's final determination when the Appeals Council denied plaintiff's request for review on August 20, 2014 (Tr. 1-4), and this action followed.

In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ failed to properly evaluate the medical source opinion of the treating nurse practitioner, and failed to properly evaluate plaintiff's capacity to return to her past relevant work.  *See* Items 7-1, 15.  The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and based on substantial evidence.  *See* Item 11-1.

**DISCUSSION**

I.   **Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis.

1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d

1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II. Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[4] As indicated above, the

---

[4] Additionally, to qualify for disabled widow's insurance benefits, a claimant must establish that: (1) she is the widow of a wage earner who died while fully insured; (2) she is at least 50, but less than 60 years of age; (3) she is disabled, as defined in 42 U.S.C. § 423(d), and (4) her disability commenced within seven years of the month in which the wage earner died. 42 U.S.C. § 402(e)(1), (4); *see also* 20 C.F.R. § 335; *Beach v. Comm'r of Soc. Sec.*, 2012 WL 3135621, at *10 (S.D.N.Y. Aug. 2, 2012).

regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R.§§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant meets this burden, the burden shifts to the Commissioner to show

that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)). "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

### III.    Plaintiff's Motion: Evaluation of Treating Source Opinion Evidence

Plaintiff's primary contention in support of her motion for judgment on the pleadings is that the ALJ failed to fully and properly evaluate the weight to be given the opinion of NP Lynn Grucza, expressed in her December 2011 physical RFC assessment report, with respect to the work-related functional limitations imposed by plaintiff's impairments. In this regard, the Social Security regulations provide that in determining eligibility for SSI benefits, the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, "[r]egardless of its source," including:

> (I) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the ... physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart,* 362 F.3d 28, 32 (2d. Cir. 2004) (citing 20 C.F.R. § 416.927(c); *see also* 20 C.F.R. § 404.1527(c)). As explained in Social Security Ruling ("SSR") 06–03p, these requirements apply to the ALJ's evaluation of opinion evidence not only from "acceptable medical sources," but also evidence provided by " 'non-medical sources including … nurse practitioners …." SSR 06–03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006) (citing 20 C..R. §§ 404.1502, 416.902); *see, e.g., Barnes v. Colvin*, 2014 WL 5500636, at *5 (W.D.N.Y. Oct. 30, 2014).

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06–03p, 2006 WL 2329939, at *6. Under this guidance, "[w]hile the Commissioner is thus free to decide that the opinions of 'other sources' … are entitled to no weight or little weight, those decisions should be explained." *Sears v. Astrue*, 2012 WL 1758843, at *3 (D.Vt. May 15, 2012); *see also Kohler*, 546 F.3d at 268–69 (although ALJ is not required to give controlling weight to opinion of non-medical source, he should have given the opinion "some consideration"); *Delacruz v. Astrue*, 2011 WL 6425109, at *17 (S.D.N.Y. Dec. 1, 2011) (all courts agree that "other source" opinions "must be accorded some weight").

As indicated above, in assessing plaintiff's RFC in this case, the ALJ gave great weight to the Dr. Miller's opinion that, based upon the results of the consultative internal medicine examination conducted on January 12, 2011, plaintiff's impairments caused no more than mild limitation of her physical ability to perform basic work-related activities. The ALJ found this opinion to be consistent with the medical evidence, including progress notes and reports from ECMC following an accident on September 23, 2009, when plaintiff was hit by a car while riding a bicycle. She was treated at the emergency room for pain in her right upper quadrant, right leg, and chest, and a CT scan revealed a right side chest contusion and small hiatal hernia (Tr. 242-49). The ALJ also considered treatment notes from Pinnacle Orthopedics, where plaintiff was seen between November 2009 and January 2010 by Drs. Graham Huckell and Dr. Zair Fishkin, along with physician's assistants Sean Metz and David Parsons (Tr. 354-70). On November 11, 2009, Dr. Huckell examined plaintiff's right knee and lower leg, and reviewed x-rays showing no evidence of fracture, dislocation or spurring. Dr. Huckell diagnosed contusion of the right knee and recommended physical therapy (Tr. 367-370). On December 3, 2009, plaintiff was seen by PA Parsons and Dr. Fishkin to address her "chief complaint" of neck and low back pain (Tr. 356-61). Upon physical examination and review of MRIs and x-rays of plaintiff's cervical and lumbar spine, Dr. Fishkin diagnosed disc herniation at C5-6, C6-7, and L2-3, and stated his opinion that plaintiff "sustained significant injuries to the spine as a result of the motor vehicle accident" (Tr. 359), and "is considered to be disabled at this time …" (Tr. 360). Plaintiff attended four sessions of physical therapy at Pinnacle during November and December 2009 (Tr. 355-66). She tolerated exercises well and reported improvement in

her symptoms, and was discharged from physical therapy on January 18, 2010, after failing to return for further services (Tr. 354).

The ALJ also credited NP Grucza's October 2010 employability report of to the extent it assessed no more than moderate functional limitations, but found no evidentiary support for Ms. Grucza's December 2011 assessment of significantly more restrictive postural and other work-related limitations, and gave it no weight at all. Although the ALJ's rationale for this finding is not entirely clear, the result appears to have been based at least in part on the ALJ's determination that the treatment notes from plaintiff's longstanding "routine and regular" treatment at ECMC revealed that plaintiff did not complain to ECMC treating sources about low back or neck pain until November 2011, and she was not referred for x-rays of the lumbar and cervical spine until March 2012 (*see* Tr. 26).

As discussed above, however, the court's review of the record as a whole reveals substantial medical evidence to support the reasonable conclusion that plaintiff reported her history of neck and back pain to her treating and consultative sources on a relatively consistent basis following her car accident in September 2009. For example, when plaintiff was seen at Pinnacle Orthopedics in December 2009, her chief complaint was neck and low back pain, and she reported a history of "ongoing neck and low back pain" since the accident (Tr. 356). X-rays of the cervical and lumbar spine were performed and reviewed by Dr. Fishkin at that time (*see* Tr. 359), and Dr. Fishkin's notes also refer to prior diagnostic MRI studies of the cervical and lumbar spine performed in October 2009 (Tr. 357).

In addition, as reported by NP Grucza in her December 2011 physical RFC assessment, plaintiff had been a patient at ECMC since 2004, and was seen on a regular

basis (every three months) for treatment of a multitude of problems, including chronic cervical and lumbar pain (*see* Tr. 348). Her symptoms were listed as fatigue, arthralgias, cervical neck pain, lumbosacral pain, insomnia, severe pain with movement of her hands, anxiety, sadness, crying, feeling overwhelmed, and headaches (*id.*). Among other findings, NP Grucza indicated that plaintiff's pain and other symptoms would occasionally[5] interfere with her ability to perform even simple work tasks; she was capable of low stress employment; she could sit for 30 minutes at a time and about 2 hours in an 8-hour workday, stand for 15 minutes, and stand/walk less than two hours out of an 8-hour workday; she could never lift more than 10 pounds, and could rarely lift less than 10 pounds; she would need to take a 1-2 minute break every 30 minutes; and she and would miss about three days of work per month as a result of her medical impairments (Tr. 350-351).

This assessment provides perhaps the most comprehensive and current evaluation of record regarding plaintiff's work-related functional limitations and, as the discussion above reveals, contains findings relatively consistent with those reported in the notes of plaintiff's treatment at ECMC and Pinnacle Orthopedics during the relevant period. Notwithstanding the likely effect of these findings on the outcome of the case, and without indicating that he fully considered the length, nature and extent of plaintiff's treatment relationship with NP Grucza, the ALJ determined that Ms. Grucza's assessment was entitled no weight whatsoever in the formulation of plaintiff's RFC. In the court's view, the ALJ's written decision should have provided a more complete explanation for this

---

[5]"Occasionally" is defined on the PRFCQ form as "6% to 33% of an 8-hour working day" (Tr. 349).

determination in order to allow plaintiff and subsequent reviewers to follow his reasoning, and to ensure compliance with the requirements of the regulations and rulings governing adjudicators' evaluation of medical source opinion evidence.

For these reasons, and upon review of the administrative record as a whole, the court finds that the ALJ's decision in this case was based on a misapplication of the regulations and case law governing consideration of the findings and opinions of treating medical sources, with the result that the ALJ disregarded highly probative evidence of plaintiff's work-related functional limitations. Accordingly, the matter must be remanded to the Commissioner for further consideration in accordance with the matters discussed herein. On remand, the Commissioner shall consider "[a]ny issues relating to [plaintiff's] claim …," 20 C.F.R. §§ 404.983, including but not limited to the ALJ's evaluation of plaintiff's capacity to return to her past relevant work.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Item 7) is granted, the Commissioner's motion for judgment on the pleadings (Item 11) is denied, and the case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with the matters discussed above.

The Clerk of the Court is directed to enter judgment in favor of plaintiff, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   January 6, 2016
p:\pending\2014\14-858.ssdi.wi.ssi.dec16.2015